UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

CARROLL INDEPENDENT FUEL, LLC  :
       Plaintiff,                                 :
                                                          :
      v.                                                 :    No. 5:23-cv-1631
                                                          :
RAJI, INC, *et al.*,                                 :
       Defendants.                           :
_____

**O P I N I O N**
**Plaintiff's Motion for Preliminary Injunction, ECF No. 10 - Denied**

**Joseph F. Leeson, Jr.**                                                                                                     July 3, 2023
**United States District Judge**

### I.     INTRODUCTION

This case involves trademark infringement, breach of contract, conversion, unjust enrichment, and tortious interference claims resulting from the sale of a gas station and the subsequent change in supplier of gasoline by the new owners and operators. Currently pending is a Motion for Temporary Restraining Order and Preliminary Injunction filed by Plaintiff Carroll, a gasoline supplier, against the former and current owners of the gas station. For the following reasons, the motion is denied.

### II.     PROCEDURAL BACKGROUND

The action was initially filed in the Court of Common Pleas in Lehigh County, Pennsylvania on April 24, 2023. Defendants removed on grounds of diversity of citizenship and federal question jurisdiction on April 28, 2023. Plaintiff has filed a Motion for Temporary Restraining Order and for Preliminary Injunction, asking the Court to issue an injunction preventing the Trexler Defendants from selling non-Sunoco branded fuels for the duration of the

litigation. The Motion is fully briefed. The Court held oral argument on the Motion June 14, 2023.

The Court makes the following findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a) (providing that in granting or denying a preliminary interlocutory injunction, "the court must find the facts specially and state its conclusions of law separately").

## III.  FINDINGS OF FACT[1]

Defendants Raji, Inc. and Parminder Thind ("Thind Defendants") owned neighboring properties on which they operated a gas station and a truck stop. Compl. ¶ 2, ECF No. 1. In March 2021, they entered into a ten-year Agreement with Plaintiff Carroll Independent Fuel, LLC to brand the gas station facility with Sunoco trademarks and to supply the station with Sunoco fuel. *Id.* ¶ 35. The Agreement contained a provision for minimum requirements for monthly purchases of fuel, and if this amount was not met, it would be considered a material breach of the Agreement. *Id.* ¶¶ 38-39. The Agreement also stated that the Thind Defendants were "prohibited from engaging in any action or omitting to take any action that will diminish, reduce, injure, dilute, or otherwise damage the value of the Sunoco mark." *Id.* ¶ 48. Further, there was an additional provision that the Thind Defendants could not transfer or otherwise assign their interests to another without the consent of Carroll. *Id.* ¶ 49.

In June 2022, the Thind Defendants entered into an agreement to sell the truck stop property to Trexlertown Plaza Estates, LLC "and/or one or more of the Trexlertown

---

[1]  The findings of fact are based on undisputed factual allegations in the Complaint, motions, and briefs. The exhibits attached thereto, to the extent they do not depend on credibility assessments, also form the basis of the findings of fact.

Defendants." [2]  *Id.* ¶ 57.  In August 2022, the Thind Defendants entered into a purchase and sale agreement and sold the gasoline station business to Defendant Trexler Express.  *Id.* ¶¶ 57-58.  The deed for the property was recorded on November 30, 2022, and listed Trexlertown Plaza as Grantee.  *Id.* ¶ 59.  Since the transfer of ownership, the gasoline station has received two deliveries of fuel from Carroll, both in January 2023.  *Id.* ¶ 60.  Payment has not been made for those deliveries.  *Id.*  The Trexler Defendants state that negotiations to continue with Carroll as supplier were unsuccessful.  Trexler Br. 2, ECF No. 17.

The gasoline station business remains open with an unnamed supplier of gasoline.  *Id.*; Compl. ¶ 71.  The Sunoco trademarked materials remain in place.  *Id.* ¶ 71.  The Trexler Defendants altered the signage before the suit commenced, first the word "Sunoco" was covered and later, after the Complaint was filed, the Trexler Defendants covered more phrases and the entirety of the Sunoco symbol.  *See* Tan Decl. App'x A, ECF No. 10-3; Dyal Decl. Ex. A, ECF No. 17-1.  In April 2023, an employee at the sales counter "represented [to a Carroll employee during inspection[3]] that the motor fuel being sold was in fact Sunoco branded motor fuel."  *See* Greene Decl. ¶ 4, ECF No. 10-1.  At this time, other trademarked branding remained visible, such as "the official fuel of Nascar."  *Id.* at ¶ 5.  As of June 1, 2023, receipts from the gas station business featured the name "Trexler Plaza Sunoco" at the top of the receipt.  *See* Greene Supp. Decl. Ex. 4, ECF No. 19-1.  The Trexler Defendants have since removed the phrase from the receipt.  *See* Trexler Defs. Sur-Reply Br. 5, ECF No. 20-1.  Small signs related to the Sunoco credit card had remained on the door to the gas station and the gas pumps themselves at the onset

---

[2]    The Trexler or Trexlertown Defendants is comprised of JAJ Enterprise, LLC, Trexler Express, LLC, Trexlertown Retail Center, LLC, Trexlertown Plaza Estates, LLC, Kishan Jivani, Sunita Rani, and Har Dyal.  *See* Carroll Mot. 1.
[3]    It is unclear from the declaration whether the employee knew he/she was speaking to someone from Carroll.

of proceedings. *See* Greene Supp. Decl. Exs. 2–3. Those were covered by June 7, 2023. *See* Dyal Supp. Dec. ¶ 12, ECF No. 25-1.

Carroll entered into an agreement with Sunoco, LP in 2015 to supply fuel to specific gas stations and to provide those stations with branding including the Sunoco trademark, colors, insignia, and symbols. Compl. ¶¶ 29, 31. In March 2023, Carroll received a letter from Sunoco raising concerns regarding the Trexler Plaza Station, stating Carroll would be in breach of contract with Sunoco if the gasoline station was selling fuel other than Sunoco. *Id.* ¶¶ 75-76 and Ex. 13 ("If this location is found to be selling product other than Sunoco Spec fuel and or selling products on a network other than the Sunoco network, Carroll would be in direct violation of your Sunoco Branded Fuel Supply Agreement dated September 15th 2015 and could be subject to immediate termination."). On April 5, 2023, the fuels at the gasoline station were tested and determined to be a fuel other than Sunoco-branded fuels. *See* Carroll Mot. ¶ 10, ECF No. 10; Antonelli Decl. ¶ 3. On April 6, 2023, Sunoco Account Manager Joseph Antonelli sent an email to Carroll advising that Carroll was in violation of its contract.[4] *Id.* at ¶ 4.

Carroll alleges several counts in the Complaint: (I) Breach of Contract as to Defendants Raji and Thind regarding the sale of the business without Carroll Fuels' consent; (II) Violation of 15 U.S.C. § 1125 (Section 43 of the Lanham Act) as to Defendants Raji, Thind, Trexler Express, Trexler Retail, Dyal, Jivani, and Rani regarding use of the Sunoco Brand and use of non-Sunoco fuels[5]; (III) Unjust Enrichment as to Defendants Trexler Express, Trexler Retail, Dyal, Jivani,

---

[4]     This contract has not been included with the filings nor has any additional communication from Sunoco since the violation.

[5]     The Complaint alleges a violation of 15 U.S.C. § 1125(a). Compl. ¶ 113. In Plaintiff's Reply Brief, it clarifies and argues its claim would succeed on both False Association grounds, § 1125(a)(1)(A), and False Advertising grounds, § 1125(a)(1)(B). *See* Carroll Reply Br. 3, ECF No. 19.

and Rani regarding outstanding payment for delivered fuels and continued use of equipment and trademarks; (IV) Conversion as to Defendants Trexler Express, Trexler Retail, Dyal, Jivani, and Rani regarding outstanding payment for delivered fuels and continued use of equipment and trademarks; (V) Unjust Enrichment as to Defendant Trexlertown Plaza regarding outstanding payment for delivered fuels; (VI) Conversion as to Defendant Trexlertown Plaza regarding outstanding payment for delivered fuels; and (VII) Tortious Interference as to Defendants JAJ and Dyal regarding purchase of the business without consent of Carroll Fuels. Plaintiff requests relief for Counts I and II by money damages, and either an injunction preventing sale of non-Sunoco fuel or the removal of Sunoco trademark materials at the expense of Defendants. Plaintiff requests only money damages for Counts III through VII.

## IV. STANDARD OF REVIEW Preliminary Injunction[6] - Review of Applicable Law[7]

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). "The court need only determine that the moving party would likely succeed on at least one claim to issue injunctive relief." *Arrowhead Gen. Ins. Agency, Inc. v.*

---

[6] "The applicable Federal Rule does not make a hearing a prerequisite for ruling on a preliminary injunction." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175-76 (3d Cir. 1990) (listing the circumstances where a hearing is not required include). Additionally, a hearing may not be required if "the adverse party has waived its right to a hearing." *Prof'l Plan Exam'rs, Inc. v. Lefante*, 750 F.2d 282, 288 (3d Cir. 1984).

[7] "The standards for a temporary restraining order are the same as those for a preliminary injunction." *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994).

*Lincoln Gen. Ins. Co.*, No. 1:16-CV-1138, 2016 U.S. Dist. LEXIS 83492, at *16 n.4 (M.D. Pa. June 28, 2016). "In defining irreparable harm, it is not enough to establish a risk of irreparable harm, rather, there must be a clear showing of immediate irreparable injury" and "it must be so peculiar in nature that money cannot compensate for the harm." *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994). *See The York Grp., Inc. v. Yorktowne Caskets, Inc.,* 924 A.2d 1234, 1242–43 (Pa. Super. Ct. 2007) ("'Extant case law makes clear that the impending loss of a business opportunity or market advantage may aptly be characterized as an "irreparable injury" . . . for the purpose of a preliminary injunction.'" (quoting *Kessler v. Broder*, 851 A.2d 944, 951 (Pa. Super. Ct. 2004))). *See also Nichino Am., Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 183 (3d Cir. 2022) (explaining that the Trademark Infringement Act creates "a rebuttable presumption of irreparable harm favoring a plaintiff who has shown a likelihood of success on the merits of an infringement claim"). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999).

V.   **CONCLUSIONS OF LAW**

For purposes of this Opinion, the Court assumes *arguendo* that Carroll is likely to succeed on the merits of its false association claim, which is its first required showing to obtain preliminary injunctive relief. As to the second element, a claim that is likely to succeed on its merits under Section 43(a) of the Lanham Act is entitled to a rebuttable presumption of irreparable harm. *See* 15 U.S.C. § 1116 ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation identified in this subsection . . ."); 1 Charles E. McKenney & George F. Long III, *Federal Unfair Competition: Lanham Act 43(a)* § 10:4 (Apr. 2023).

Nevertheless, because Carroll is unable to satisfy either of the remaining two elements, its request for a preliminary injunction is denied.[8]

### A.   The balance of equities weighs against preliminary injunctive relief.

The balance of equities must also weigh in favor of Carroll to grant a preliminary injunction, in other words "the potential injury to the plaintiff if an injunction does not issue versus the potential injury to the defendant if the injunction is issued." *Novartis*, 290 F.3d at 596 (citing *Sandoz Pharms. Corp*, 902 F.2d at 226).  Carroll alleges that the actions by Defendants have caused Carroll to breach its fuel supply agreement with Sunoco and that it faces reputational harm within its industry.  *See* Compl. at Ex. 13; Carroll Br. at 9-10.  Carroll argues that this breach can cascade into Sunoco terminating the contract at any point.  *See* Carroll Br. at 9-10.  The termination would limit or end Carroll's ability to continue as a supplier for the forty-nine (49) stations it is contractually obligated to provide with Sunoco Fuel and Carroll would "incur incalculable damages to debrand the aforementioned 49 Sunoco locations, rebrand those locations with a replacement brand that would have less market presence than the Sunoco brand, and defend an undeterminable amount of litigation." *Id.* at 11.  Regardless, Sunoco's potential termination of the contract due to this breach, and any alleged subsequent harm, would not be definitively avoided via a preliminary injunction because the breach has already occurred and, according to Carroll, Sunoco can terminate the contract at any point due to that breach.[9]

---

[8]   The balance of equities and public interest analysis on the false association claim is substantially the same as to all other counts.

[9]   It also appears that Sunoco declaring breach is unlikely at this time.  Sunoco was aware of a potential breach of its contract with Carroll in March 2023.  After confirming that the fuel being sold at the gas station is not Sunoco brand fuel, on April 6, 2023, Sunoco Account Manager Joseph Antonelli sent an email to Carroll advising that Carroll was in violation of its contract. *See* Antonelli Decl. ¶ 4.  More than two (2) months have elapsed and the contract has not been terminated, nor has Sunoco given any indication that it intends to declare a breach.

On the other hand, should the preliminary injunction be issued, the Trexler Defendants would either be forced to purchase Sunoco fuel from Carroll at unspecified terms or be required to shut down the gas station business while litigation is pending.  *See* Carroll Reply Br. 9.  The Trexler Defendants contend that the terms previously offered by Carroll would be unworkable and would result in the shutdown of the gas station business and termination of employees.  *See* Dyal Decl. ¶¶ 9-10.

If a preliminary injunction is issued, the harm to the Trexler Defendants by forcing the business to close is certain, while there is no guarantee that any harm to Carroll would be avoided.  Further, the harm to the Trexler Defendants is significant and outweighs the potential harm to Carroll if the preliminary injunction is not granted.  *See N. Am. Commc'ns, Inc. v. Herman*, No. CV 3:17-157, 2018 WL 1229709, at *4 (W.D. Pa. Mar. 8, 2018) (holding that forcing the non-movant out of business is a greater harm than the harm to the movant that would be avoided by granting the preliminary injunction).  The balance of equities therefore weighs against the extraordinary remedy of a preliminary injunction.

**B.     A preliminary injunction is not in the public interest.**

The remaining element, public interest, also does not weigh in favor of Carroll's request for injunctive relief. The public interest in a trademark case "is most often . . . the right of the public not to be deceived or confused." *Opticians Ass'n of Am.*, 920 F.2d at 197.  In this case, however, Carroll has presented no evidence of actual confusion.  Also, there is no evidence that the Trexler Defendants intended to deceive the public or to pass the Sunoco trademark off as their own. Rather, this case essentially involves a question as to how quickly the Trexler Defendants removed Sunoco's branding after negotiations with Carroll to purchase fuel failed. At the time the action was initiated in state court, the Trexler Defendants had owned the gas

station for less than five (5) months.  During this time, they continued to sell Sunoco branded fuel for approximately two (2) months.  After the Trexler Defendants were unable to reach an agreement with Carroll to continue selling Sunoco gasoline, they covered the "Sunoco" name from the gas station.  To date, the Trexler Defendants have removed or covered substantially all references to Sunoco branding so there is no ongoing risk of confusion to the public.  *See Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 649 (3d Cir. 1958) (holding that "where there has been a cessation of the conduct complained of, at any time prior to judgment, it is a matter for the exercise of the discretion of the court, as to whether an injunction should issue"); *Supelco, Inc. v. Alltech Assocs.*, 1986 U.S. Dist. LEXIS 21236, *1 (E.D. Pa. Aug. 25, 1986) (refusing to issue a preliminary injunction where the defendants had stopped the offending conduct).

Moreover, courts have found that when a preliminary injunction requests the closure of a business "granting a preliminary injunction would likely frustrate the public interest because [the non-movant] would be forced to close its doors and leave its employees unemployed." *N. Am. Commc'ns, Inc.*, 2018 WL 1229709, at *4 (holding that forcing the non-movant out of business is contrary to the public interest). Public interest has also been found not to be best served when courts decide "which business may operate and which may not." *Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, No. ST-2014-CV-513, 2015 WL 9031220, at *10 (V.I. Super. Ct. Nov. 10, 2015) ("Only in the most extreme of circumstances should a court interfere in the operation of a business. The public interest is also not served when allegations of irreparable harm can form the basis for an order forcing a business to close."), *aff'd*, 68 V.I. 584 (2018). Consequently, a preliminary injunction is not in the public interest.

## VI.     CONCLUSION

Assuming *arguendo* that Carroll has shown a likelihood of success of its false association claim, which presumes irreparable harm, the balance of equities and public interest do not weigh in favor of injunctive relief, nor would they on any other count.  Carroll has not shown that a preliminary injunction would in fact prevent its alleged irreparable harm because the ability of Sunoco to terminate its contract with Carroll remains regardless of whether the sale of non-Sunoco fuel by the Trexler Defendants is enjoined.  In contrast, the harm to the Trexler Defendants that would certainly follow if a preliminary injunction is issued, the close of its business, is significant.  For this reason, as well as the fact that the offending conduct has ceased, the balance of equities and public interest do not support a preliminary injunction.  The motion for preliminary injunction or temporary restraining order is denied.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge